**Richard S. HOLT, Plaintiff, Appellant,**

v.

**The GAMEWELL CORPORATION, Defendant, Appellee.**

No. 85–1976.

United States Court of Appeals, First Circuit.

Argued April 7, 1986.

Decided July 30, 1986.

Paul A. Manoff, Boston, Mass., for appellant.

Phillips Axten, with whom Alan D. Rose, Francisca D. Morant and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This case is before us on appeal from a summary judgment finding that appellee The Gamewell Corporation (Gamewell) did not violate the Age Discrimination in Employment Act (the ADEA), 29 U.S.C. § 621 *et seq.*, when it terminated appellant Holt's employment as part of a general reduction in force. At the time of the discharge, Holt was 63 years old and he was earning an annual salary of $43,825 as purchasing manager of Gamewell.

Holt's discharge occurred in the following manner: On June 29, 1984, Alan Walters (Walters), president of Gamewell, was informed by the board of directors of its parent corporation, that it was necessary to reduce the company's yearly payroll expense by $500,000. This decision was reached because Gamewell had experienced large net operating losses since the time of its acquisition in April 1981. There was general agreement among those meeting on the matter that, in order to reach that figure with a minimum negative effect on Gamewell's ability to operate efficiently, it would be necessary to eliminate several high-level as well as low-level positions. It was Walters' goal to meet the budget cut through the elimination of twenty positions in all. Walters, in turn, notified Eugene Zorn (Zorn), the company's vice-president and technical director, that he would have to layoff from 10–12 employees from his area of operations. Zorn was also told that the criteria to use in selecting employees for layoff was to focus on those persons whose positions could be eliminated or

whose duties could be absorbed by others without significantly imparing Gamewell's operating capacity. Zorn was instructed to present his recommendations by July 3rd.

Zorn in turn called upon Frederick Hayes (Hayes), the director of manufacturing operations, to make recommendations for the layoff of two higher salaried and three lower salaried employees. Hayes was told that it was critical to ensure that the duties of any person discharged could be covered by other employees or eliminated altogether. He was further instructed that $30,000 per year was the dividing line of those considered to be the higher salaried group. Out of a group of six selected for review, Hayes chose to discharge Holt and Frank DeLoreto, the chief industrial engineer, as within the higher salaried group.

Appellant does not argue with the company's position that the criteria for discharge was both high salary and the ability of other employees to take on the duties of the discharged employee. Rather, it is his contention that a higher salary is directly related to seniority and is, therefore, a function of age, an illegal criteria for discharge.

■ An employee suing his employer for age discrimination must show either disparate treatment or a discriminatory impact. To prove disparate treatment, he must show purposeful or intentional discrimination. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 117 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). To prove a disparate impact, he must prove that a facially neutral practice has a significant discriminatory impact on members of the protected class. *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982); *Massarsky, supra* at 117; *Geller v. Markham*, 635 F.2d 1027 (2d Cir.1980).

■ In cases involving reduction in force, in order to establish a prima facie case of age discriminatory treatment a plaintiff must show that: (1) he was in the protected age group; (2) he was performing his job at a level that met his employ-

er's legitimate expectation; (3) he was fired; and (4) the employer did not treat age neutrally or that younger persons were retained in the same position. *E.E.O.C. v. Western Electric Co., Inc.*, 713 F.2d 1011, 1014–15 (4th Cir.1983). There is no doubt that Holt has fulfilled the first three elements. He has failed, however, to show that age was not treated neutrally.

Holt compares himself to the three buyers who worked under him, all of whom were younger than he was, and whose salaries were below $30,000. He suggests that they were not subject to possible discharge because of their lower salary, and implies that they were doing the same work that he did, and that he occupied, more or less, the same position. The record reveals otherwise.

Appellant was the purchasing manager. He was the only person who occupied this position. He trained and supervised the buyers and evaluated their performances. He and Hayes jointly determined their salaries. While it is true that Holt was capable of performing all the duties in his section, and that he in fact substituted for them when one of the buyers was absent, he nevertheless had a wide range of responsibilities not delegatable to his subordinates.

Gamewell chose to eliminate this management position. Appellant does not challenge this decision. Rather, he implies that Gamewell should have discharged one of the buyers instead and give that position to him. While such a demotion may have been acceptable to him, he cites no legal authority for making such an option a legally binding requirement upon his employer. If an employer does not engage in prohibited conduct, this Court cannot substitute its criteria for that of the company's legitimate management.

■ To establish a prima facie case of discriminatory impact, a plaintiff must show that the process used by the employer to select employees to be discharged resulted in unfavorable treatment of a dis-

proportionate number of the members of the protected class. *Leftwich v. Harris-Stowe State College*, 702 F.2d 686 (8th Cir.1983.) *See also Massarsky, supra* 706 F.2d at 120. The fact that a neutral discharge policy has an adverse effect on a single employee or even a few employees does not itself create such a prima facie case. *Massarsky, supra* at 121. The question, then, is whether choosing for discharge those higher paid employees is in itself a *de facto* act of age discrimination.

■ Salary may well be directly related to seniority when comparing persons occupying the same position. But seniority as a function of age is dependant upon the age at which the employee began to work for the company. For example, a 39 year old, not a member of the class protected by the ADEA, who joined the company at age 25 would have greater seniority than a 50 year old who began at age 45. The record before us belies Holt's explanation for the level of his salary. It was primarily the result of promotions, merit raises based on his excellent evaluations, and his occupying a managerial position. The fact that he was 63 years old and in the protected class when he was discharged is not so much a function of seniority as it is of his ability and that he was already in his late forties when he began working for the company's predecessor.

Additionally, Holt offered no statistics to show that, in fact, age or seniority is significantly related to salary in managerial positions at the company.[1] *See, e.g., Leftwich, supra* at 690. We are therefore unable to conclude that, given the record here, there is a discriminatory impact based upon high salary as a criteria for discharge.

The decision of the district court is *affirmed.*

---

1. By way of comparison, although he was chosen for discharge for other reasons besides high salary, Larry Garland, the vice-president of Sales and Marketing had an annual salary of $70,000 and was only 40 years old at the time he was let go.